HELEN M. BREEN, AS SURVIVING WIDOW OF ROBERT L. BREEN, DECEASED, CLAIMANT AND PLAINTIFF, APPELLANT, *v.* INDUSTRIAL ACCIDENT BOARD, DEFENDANT AND RESPONDENT.

No. 11233.
Submitted December 1, 1967. Decided January 19, 1968.
436 P.2d 701.

464

J. H. McAlear, Red Lodge, Robert H. Wilson, Hardin, for appellant.

L. V. Harris, Helena, for respondent.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

This is an appeal by a widow from a judgment of the district court of Big Horn County denying compensation for the death of her husband under the provisions of the Workmen's Compensation Act. Also involved is a cross-appeal by the Industrial Accident Board from that part of the same judgment remanding the case back to the Board for determination of liability for any permanent partial disability of the deceased husband prior to his death.

For simplicity, the plaintiff in this case, Helen M. Breen, now Helen M. Breen Patrick, will be referred to as the widow or as claimant; the defendant, Industrial Accident Board, as the Board, and Robert L. Breen, claimant's deceased husband for whose death compensation is sought herein, by his given name or as the deceased.

By way of background, the Board conducted hearings on the widow's claim for compensation for the death of Robert L. Breen, her husband, and denied her claim. Claimant appealed to the district court where additional evidence was taken. On the basis of the evidence taken at the hearings before the Board, and the additional evidence received at the hearing before the district court, that court entered findings of fact, conclusions of law and a judgment denying the widow's claim for compensation for the death of Robert L. Breen, but remanded

the case back to the Board for determination of liability, if any, for permanent partial disability of the deceased prior to his death.

The findings of fact entered by the district court can be summarized in the following manner: Robert L. Breen was injured in a compensable industrial accident on December 12, 1960, at which time his employer was enrolled under Plan III (State Fund) of the Workmen's Compensation Act. In addition to his medical expenses, compensation was paid him at the lawful rate from December 13, 1960, through July 17, 1961, from July 30, 1961, through May 12, 1962, and from June 27, 1962, through November 13, 1962; *he had done considerable drinking for years both before and after his accidental injury;* on November 16, 1962, he had been drinking excessively and had obtained seven sleeping capsules before registering in a Hardin hotel late that afternoon; he was found dead at about 3:00 o'clock p. m., the following day in his hotel room; a partial autopsy disclosed that the immediate cause of his death was suffocation from vomit but did not reveal whether the sleeping capsules had been consumed by him; *the primary cause of his death was his voluntary drinking of intoxicating beverages to excess; the plaintiff failed to prove by a preponderance of evidence that if death was contributed to by consumption of the sleeping capsules, their use was by reason of his injuries in his previous industrial accident; that claimant failed to establish Breen's previous industrial accident was the proximate cause of his death;* and that the court was unable to determine from the record whether Breen sustained permanent partial disability as a result of his previous industrial accident and that no determination had been made by the Board with respect to an award for permanent partial disability. The findings attacked by claimant are underlined.

On the basis of these findings, the district court entered the following conclusions of law: (1) that Breen's death was not the result of an injury "arising out of and in the course of" his

employment within the meaning of section 92-614, R.C.M.1947; (2) that the evidence does not preponderate against the findings of fact and conclusions of law of the Board; and (3) that the order of the Board should be approved and affirmed and the appeal dismissed except that the case should be remanded to the Board "for a determination of the existence of, and liability for, permanent partial disability."

Judgment was entered accordingly by the district court. Claimant's appeal and the Board's cross-appeal followed.

The issues presented for review upon this appeal and cross-appeal are: (1) The correctness of the district court's findings of fact which in summary form are underlined above; (2) the correctness of the district court's conclusions of law set forth above; and (3) the judgment of the district court dismissing the death claim. These issues all relate to the basic issue in this case, viz., the presence or absence of causal connection between Breen's industrial accident of December 12, 1960, and his death approximately two years later. The sole issue presented for review on the Board's cross-appeal is the correctness of that part of the judgment remanding the case to the Board for determination of the existence of, and liability for permanent partial disability.

Insofar as the issues presented for review by claimant are concerned, claimant's basic argument is that Breen suffered a compensable industrial accident on December 12, 1960, resulting in severe head injuries; that as a result of these head injuries, Breen suffered more or less continual pain up to the time of his death; that to alleviate the pain, Breen took nembutal capsules and drank alcoholic beverages to excess; that as the result of taking nembutal capsules prescribed by a physician in combination with excessive drinking, Breen died in the Hardin hotel room on November 17, 1962; and that Breen's death is compensable under the workmen's compensation act because it was hastened or contributed to by the effects of his injuries in his previous industrial accident.

468

The Board, on the other hand, argues that Breen's drinking was not a natural consequence of his industrial accident; that his drinking was the cause of his death; and that intervening causes resulted in Breen's taking nembutal rather than any residual of his industrial accident. Basically the Board's position is that the necessary causal connection between Breen's industrial accident of December 12, 1960, and his death on November 17, 1962, was not established by claimant.

■■ At the outset it must be noted that the scope of review by the Supreme Court upon this appeal is confined to a determination of whether there is substantial evidence to support the findings of the district court (McKinzie v. Sandon, 141 Mont. 540, 380 P.2d 580; Newman v. Kamp, 140 Mont. 487, 374 P.2d 100; Marker v. Zeiler, 140 Mont. 44, 367 P.2d 311; Dean v. Anaconda Company, 135 Mont. 13, 335 P.2d 854). Such findings and conclusions are clothed with the presumption of correctness (Section 93-1301-7, subds. 15 and 33, R.C.M. 1947; Friedt v. Industrial Accident Board, 136 Mont. 141, 345 P.2d 377; Laukaitis v. Sisters of Charity, 135 Mont. 469, 342 P.2d 752; Birnie v. United States Gypsum Co., 134 Mont. 39, 328 P.2d 133), and will not be reversed on appeal unless the evidence preponderates against them (Morgan v. Industrial Accident Board, 133 Mont. 254, 321 P.2d 232; Wieri v. Anaconda Copper Mining Co., 116 Mont. 524, 156 P.2d 838; Newman v. Kamp, supra; Landeen v. Toole County Refining Co., 85 Mont. 41, 277 P. 615), even though conflicts in the evidence exist (Dean v. Anaconda Company, supra; Cartwright v. Industrial Accident Board, 115 Mont. 596, 147 P.2d 909; Nigretto v. Industrial Accident Fund, 111 Mont. 83, 106 P.2d 178).

On this basis we proceed with our review of the instant case. Claimant attacks three findings of fact made by the district court, the first of which is finding of fact VIII, which reads as follows:

■ "Robert L. Breen had done considerable drinking for

years, both before and after the accidental injury of December 12, 1960."

Claimant contends that this finding, while not particularly important, is not based on evidence adduced at the hearings and is misleading because it implies that Breen did not progressively degenerate into a sodden drunkard as the result of continuing pain from injuries he received in his industrial accident. Evidence was received from various witnesses for both parties who had varying opportunities for observation and who testified as to Breen's drinking habits at various times. Summarizing their collective testimony, it appears that there is no serious dispute concerning Breen's excessive drinking prior to his industrial accident except as to frequency and degree nor is there serious dispute concerning his drinking after his accident up to the time of his death except as to cause and degree. As the fact of Breen's excessive drinking both before and after his initial accident is all that is covered in this finding by the court, and as there is substantial evidence by witnesses for both parties to this effect, there is no error in this finding. Claimant's contention that this finding is misleading is bottomed on the cause of Breen's death, and the claimed progressive worsening of his drinking habits in his attempt to alleviate pain from headaches resulting from his prior industrial accident, which is not covered in this finding at all and about which more will be said later in this opinion.

Claimant's second attack is upon finding of fact X made by the district court which reads as follows:

"The primary cause of Robert L. Breen's death was his voluntary drinking of intoxicating beverages to excess. Plaintiff failed to show by a preponderance of the evidence that, if said death was contributed to by the consumption of sleeping capsules, the use of such capsules was by reason of the injury sustained in Robert L. Breen's industrial accident of December 12, 1960."

Let us first examine the record to determine the evidentiary

basis for the finding as to primary cause of death. The evidence shows that at about 3:00 o'clock in the afternoon of November 16, 1962, Dr. Whiting received a telephone call from Robert L. Breen who complained of headaches preventing his sleeping; Dr. Whiting prescribed nembutal and phoned in a prescription to a local drug store for seven 100 milligram (1½ grain) nembutal capsules with directions to take one capsule at night for sleep; sometime before 4:30 p.m. Breen appeared at the drug store to pick up the prescription at which time he was decidedly drunk, shaking and reeling and to pay for the prescription he held out a hand full of change and had the druggist take out the price; Breen registered at the Hardin hotel about 5:00 p.m. going straight to his room; about 8:00 p.m. a guest in the hotel observed Breen curled up snoring on the floor of the third floor hallway, notified the hotel clerk, and the two of them hauled him to his room and placed him on his bed without Breen ever waking up; the next afternoon at about 3:00 o'clock, Breen was discovered dead in the same position on the bed; the prescription bottle was found on the dresser and one nembutal capsule was found in Breen's clothing; a gross autopsy was performed which did not include a blood alcohol test and which did not shed any light on whether or not he had consumed the six missing nembutal capsules; the immediate cause of death was asphyxiation from aspirating vomit.

Dr. Schwiddle, Dr. Cashion and Dr. Whiting all testified that the ingestion of the six missing nembutal capsules, standing alone, would not produce death. The following testimony of Dr. Schwidde is illustrative:

"Q. And if this man drank and took nembutal at the same time and each of those was a depressant of the respiratory system, then his breathing would be slow, isn't that true? A. Well, I have already testified that I really think that these seven or six capsules of nembutal would be too trivial and rather inconsequential to be rather important in an adult.

"Q. Standing alone? A. What do you mean by that?

"Q. Well if taken, however, with whiskey, together they might be something that would induce a stupor? A. Yes. Again, this amount of whiskey being unknown, I would have to say that certainly x amount of alcohol with or without the nembutal, but I think the nembutal here is just a red herring and I don't think you will find a physician who would testify that these six capsules would make any difference one way or the other."

Additionally, the record is replete with evidence that 20 capsules of nembutal is considered a toxic or lethal dose. It is abundantly clear from the record that the drinking of alcohol by Breen was the one indispensable element without which death would not have occurred. In this sense the drinking of intoxicating beverages was the primary cause of Breen's death, the word "primary" meaning first in rank or importance, chief, principle, basic or fundamental (Webster's 3rd International Dictionary).

██ In regard to the second part of this finding to the effect that claimant did not show by a preponderance of the evidence that the use of nembutal capsules was by reason of Breen's industrial accident, the evidence is clearly conflicting on this point. Claimant's evidence indicated persistent complaints of headaches from about January 4, 1961, up to the time of his death, some brain damage as a result of the industrial accident, substantial drinking of alcoholic beverages to excess to relieve the pain from the headaches and some use of sedatives and sleeping pills in attempting to alleviate the headaches. It may be said generally that claimant's evidence tended to support her claim that Breen's use of nembutal was related to injuries received in his industrial accident, but that it was circumstantial in character and dependent largely on statements attributed to the deceased by claimant and her daughter. Evidence to the contrary consisted of testimony to the effect that Breen had been drunk most of the two week period prior to his death; medical testimony that Breen's headache of No-

vember 16 could have been the direct result of this prior drinking; testimony of Mrs. Kray that Breen told her after the industrial accident in response to her inquiry as to how his head was, "well my head was like this before I had the accident," and the existence of marital problems between claimant and deceased. It requires no citation of authority that the burden is on claimant to prove the material elements of her claim by a preponderance of the evidence. The casual relationship between the ingestion of nembutal capsules on November 16, 1962, and the injuries Breen received in the industrial accident of December 12, 1960, is a material element of claimant's case here. The district court found against claimant on the basis of conflicting evidence and inferences on this point and such finding will not be reversed unless the evidence clearly preponderates against such finding. We cannot say that such is the case here and this finding will not be disturbed upon appeal.

The last finding of fact challenged by claimant on this appeal is finding of fact XI:

"Claimant, the surviving widow of Robert L. Breen, has failed to establish that Robert L. Breen's industrial accident of December 12, 1960, was the proximate cause of his death."

This finding encompasses the basic issue on this appeal—causation. The causal connection required to establish compensability for death benefits in the instant case is prescribed by statute, section 92-608, R.C.M.1947, reading in part as follows:

"If an injured employee dies and the injury was the proximate cause of such death, then the beneficiary * * * shall receive the same compensation as though the death occurred immediately following the injury * * *."

In other words the injury received in a compensable industrial accident must be the proximate cause of the subsequent death to render death benefits payable under the Workmen's Compensation Act.

What is meant by "proximate cause" under the above

statute? Exactly the same thing it has meant under definitions of this court since time immemorial. The proximate cause of a person's death is that cause which in a natural and continuous sequence, unbroken by any new and independent cause, produces his death, and without which it would not have occurred. (See McNair v. Berger, 92 Mont. 441, 15 P.2d 834, and cases cited therein; also see MJIG, Instruction No. 15.00). This, of course, does not mean that the injury must be the sole cause of death, but it does mean that the injury must be a substantial contributing cause in the sense that death would not have occurred but for such injuries. In determining the range of compensable consequences from an industrial accident, Larson states the basic rule in this manner: "When the primary injury is shown to have arisen out of, and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct." (Larson's Workmen's Compensation Law, Vol. 1, § 13.00). We believe this to be in harmony with our statute and definition of proximate cause set forth above and a correct statement of the basic rule of causation and compensability in the instant case.

Applying Larson's rule, can it reasonably be said that suffocation from vomit after a two week drinking bout is "a natural consequence" of a head injury received in an industrial accident almost two years previously? Of course not. Breen's own voluntary drinking to excess was the primary cause of his death as determined by the district court for reasons set forth previously in this opinion. Excessive drinking to alleviate pain from headaches is ridiculous even to a layman aside from the medical testimony of Dr. Schwidde that such a history in a patient following a head injury is "absurd." Breen's headache of November 16, 1962, "could be directly from the drinking" as Dr. Cashion testified. Dr. Gelerntner's medical report of October 9, 1962, suggests that Breen's drinking was related

to causes other than headaches by the following observation: "It is interesting that he [Breen] came here [Great Falls] because he was afraid that if he remained home [Hardin] that he would drink too much because of the temptation of his companions." While we are not unmindful that the record contains conflicting medical opinions as to the causal connection between Breen's industrial injuries and his death, in our view there is substantial, credible evidence that Breen's death was not a "natural consequence" flowing from his industrial injuries, but on the contrary was the "result of an independent intervening cause attributable to [Breen's] own intentional conduct"—excessive drinking. Such being the case the findings of the district court will not be reversed on appeal under the authorities hereinbefore set out.

The conclusions of law of the district court that are also attacked by claimant need not be discussed herein as they flow directly from the findings of fact and have largely been discussed therein. In substance this entire case involves conflicting evidence on the issue of causation between the original compensable injury and the subsequent death. That issue having been decided adversely to claimant by the trier of the facts, the conclusions of law and judgment of the district court necessarily follow. This is an example of a case where claimant has not proved a material element of her claim. Chief Justice Harrison's words in Schwartzkopf v. Industrial Accident Board, (Mont. 1967), 428 P.2d 468, are equally apt here: "The evidence presented to the district court failed to establish the essential element of claimant's case—the direct relationship between the accident and his present condition. The various authorities to which claimant has referred this court are not applicable because he failed to establish this essential element."

Insofar as the cross-appeal by the Board is concerned, this likewise must fail. The Board cites section 92-608, R.C.M. 1947, as prohibiting compensation for permanent partial disability after death. The pertinent part of that statute reads as

follows: "* * * If the employee shall die from some cause other than the injury, there shall be no liability for compensation after his death." As we construe this provision it simply means that if an employee is receiving compensation as the result of an industrial injury and subsequently dies from causes other than this injury, liability for further compensation by way of death benefits or continuing disability benefits is cut off. But we do not construe this statute as terminating liability for compensation accrued prior to death but unpaid at the time of death. Here we have certain periods of time between the date of the industrial accident and the date of death for which neither temporary total nor permanent partial disability compensation has been paid. If disability existed during those periods of time, compensation is payable even after death because the benefits had accrued prior to death but were unpaid. Therefore, remanding the case to the Board for this determination was proper. Nothing contained herein is to be construed as authorizing a double payment for the same period of time, one for temporary total disability and at the same time another for permanent partial disability.

For the foregoing reasons, the judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, CASTLES and JOHN CONWAY HARRISON concur.