No. 11934

IN THE SUPREME COURT OF THE STATE OF MONTANA

1971

---

DAN DAVIS and DONALD DAVIS,

Plaintiff and Respondent,

-vs-

GEORGE V. DAVIS,

Defendant and Appellant.

---

Appeal from: District Court of the Third Judicial District,
Honorable Sid G. Stewart, Judge presiding.

Counsel of Record:

For Appellant:

William R. Taylor argued, Deer Lodge, Montana.
Hughes, Bennett and Alan F. Cain, Helena, Montana.
Alan F. Cain argued, Helena, Montana.

For Respondent:

C. W. Leaphart, Jr. argued, Helena, Montana.

---

Submitted: December 2, 1971

Decided: JAN 2 7 1972

Filed: JAN 2 7 1972

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This cause involves two actions consolidated for trial purposes in the district court of the third judicial district, Powell County. The actions were brought by two brothers against their uncle for breach of oral contracts to manage ranch properties. The matter was tried to the court sitting with a jury. From a jury verdict and judgment in favor of the plaintiffs, the defendant appeals.

The plaintiffs are Dan Davis and Donald Davis. The defendant is George V. Davis, their uncle. Each plaintiff's complaint was drawn in three counts.

Count I alleged an oral contract running from the year 1957 through 1964, whereby plaintiffs were to each receive a salary of $350 per month, plus free meat, milk, utilities, and housing. Plaintiffs were also to receive one-third of the profits of the ranches and as a further compensation each plaintiff was to be designated in a will, to be executed by defendant, to receive the ranch upon which he was living in the event of defendant's death. The respective complaints allege that the full share of profits was not paid to each plaintiff. Dan Davis prays for $71,310 damages and Donald Davis prays for $68,653 damages.

Count II alleges a similar oral agreement running from 1965 through 1966, under which each plaintiff was to receive the remuneration outlined in Count I, except that each plaintiff was to receive one-half of the profits of the ranches, less depreciation; and each was to hold the profits received for the purpose of paying inheritance taxes. Plaintiffs allege that for the years 1965 and 1966, they received no profits. Donald Davis prays for $32,000 damages and Dan Davis prays for $38,000 damages.

Count III alleges in substance that by his manner and actions defendant prevented plaintiffs from performing their contracts; that plaintiffs believe defendant has not provided for them in his will as agreed and they pray for relief in the nature of specific performance, forcing defendant to execute a will in the manner agreed upon.

By way of answer defendant admitted that plaintiffs were employed by him for the years stated in the complaints but denied the existence of any such agreements as alleged in the complaints. The bonus payments which were paid to plaintiffs by defendant were admitted; defendant denied they were paid pursuant to any set contracts, but were paid in the discretion of defendant. Defendant further alleged that plaintiffs breached the terms of whatever agreements they considered existed between defendant and themselves by demanding $1,000 per month salary and threatening to quit defendant's employ if he failed to accede to their demands.

Defendant additionally set up the defense that plaintiffs' claims through the year 1961, were barred by the statute of limitations, section 93-2604(1), R.C.M. 1947, which provides "An action upon a contract * * * not founded on an instrument in writing" must be commenced within five years. Further, that the alleged oral contracts to make a will were void as in violation of the statute of frauds, section 13-606, R.C.M. 1947, and section 93-1401-7(1) and (4), R.C.M. 1947.

During the course of the trial the district judge granted defendant's motion for a directed verdict as to the claims of plaintiffs for wages and shares of profit for the years 1956 to 1961, on the ground that such claims were barred by the applicable

statute of limitations. The court also determined the defendant had performed that portion of the agreements regarding the drafting of a will, since defendant had drafted and executed a will naming plaintiffs Donald Davis and Dan Davis as devisees of certain properties in Powell County which plaintiffs had been managing for defendant. Consequently, at the close of the evidence, Count III in each complaint was dismissed, without objection. The matter was then submitted to the jury, which returned a verdict in favor of each plaintiff in the amount of $38,205.34.

Defendant-appellant presents five issues for review:

1. Whether the verdict and judgment in the district court are supported by substantial evidence.

2. Whether plaintiffs must be held, as a matter of law, to have waived their right to insist on the performance they claim to be due from defendant under the alleged oral contracts.

3. Whether plaintiffs are precluded from recovery on the alleged contracts in view of their own breach.

4. Whether the district court erred in admitting evidence of the alleged oral contracts to make a will devising real property.

5. Whether the alleged oral contracts to devise real property and to pay a certain share of profits from ranch operations are unenforceable as being in violation of the statute of frauds.

Plaintiffs argue the appeal should be dismissed for failure of defendant to move for a new trial, and that defendant's issue 2, waiver, and issue 3, breach, are not proper issues as they were not raised at the district court level.

In the first instance, defendant has adequate procedural ground to support his appeal and a failure to move for a new trial

is not fatal to his appeal, as urged by plaintiffs. Defendant did move the district court for a directed verdict at the close of all the evidence based principally on the ground that the evidence presented at trial was insufficient to establish a basis upon which the jury could reasonably find that the contracts existed. This motion presented to the trial court the same question which plaintiffs urge can only be presented in a motion for a new trial following the verdict, if this Court is to review the evidence presented at trial on appeal.

The question urged on appeal here --- that evidence to support a verdict in favor of plaintiffs was totally lacking--- was directly presented to and ruled on by the district court. This matter was treated in Kuchinski v. Security Gen. Ins. Co., 141 Mont. 515, 518, 380 P.2d 889, thusly:

> "'A motion for a judgment of non-suit, or a motion for a directed verdict, is in effect a demurrer to the evidence and presents to the trial court a question of law to be determined [Citing cases], and where either of such motions is made in the trial court and overruled, the question of the sufficiency of the evidence to support the verdict and judgment is before this court on appeal from the judgment.' La Bonte v. Mutual Fire etc. Ins. Co., 75 Mont. 1 [10], 241 P. 631, 634.

> "'If a motion for a new trial has not been made, the court will review the evidence to determine whether there is any substantial evidence to justify the verdict. [Citing cases.]' Harrington v. H. D. Lee Mercantile Co., 97 Mont. 40, 55, 33 P.2d 553, 556."

Here, the two issues presented by defendant having to do with the alleged waiver and breach of plaintiffs, should be considered.

Under the admitted employment agreements for the periods from 1957 to 1964, and from 1965 to 1966, and concurrently under the alleged contracts to share in the profits and to draw a will,

defendant admitted an employment agreement terminable at will, but denied the existence of any alleged contracts to share in the profits or draw a will. In the pretrial order issued by the district court setting the triable issues of fact and law, defendant's position is consistently stated as a denial of any alleged contracts either to share in the profits or to fulfill any obligation to devise or bequeath to plaintiffs any property by will.

Rule 16, Montana Rules of Civil Procedure, provides a pretrial conference will formulate the issues:

> "* * *The court shall make an order which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel; and such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice. * * *"

The pretrial order setting forth defendant's contentions indicates that the contracts under which the plaintiffs were employed were terminable at will, and maintains a denial of any of plaintiffs' alleged contracts with defendant. This Court is compelled to agree with plaintiffs' argument that it stands to reason if there were no contracts there could be no breaches, and if the agreements were terminable at will, the plaintiffs were entitled to terminate at any time they saw fit. However, of more crucial weight is the procedural process which recognizes that the issues of waiver and breach were not made issues at the trial and thus may not be introduced on appeal. This Court has said on numerous occasions that it will consider for review only those questions raised in the trial court. Spencer v. Robertson, 151 Mont. 507, 445 P.2d 48; Clark v. Worrall, 146 Mont. 374, 406 P.2d 822.

- 6 -

In reference to issue 4, we deem the admission of evidence of the alleged oral contracts to make a will devising real property to have no bearing on this appeal, in view of the district court's dismissal of Count III in each complaint at the close of the evidence. The issue of the alleged oral contracts to devise property under the will of defendant was removed from the jury without objection and thus is not a part of this appeal.

In considering the principal question presented by defendant in this appeal, namely --- that evidence to support a verdict in favor of plaintiffs was totally lacking --- we will be guided by the long standing rule in Montana as stated in Bernhard v. Lincoln County, 150 Mont. 557, 560, 437 P.2d 377:

> "When such a question is before this court we will only review the evidence to decide if the verdict is supported by substantial evidence. Breen v. Industrial Accident Board (Mont. 1968), 436 P.2d 701. The fact that there were conflicts in the testimony does not mean there is not substantial evidence to support the verdict. We must accept the evidence believed by the jury 'unless that evidence is so inherently impossible or improbable as not to be entitled to belief * * *.' Wallace v. Wallace, 85 Mont. 492, 279 P. 374, 377, 66 A.L.R. 587 (1929)."

An examination of the entire record reveals conflicting but substantial evidence to support the jury's finding of a contract as opposed to a voluntary bonus.

Defendant makes a strong argument that the testimony of his two accountants, both C.P.A.'s, demonstrates the yearly payment was a bonus that was paid by defendant to the plaintiffs and understood to be paid only out of "net operating profits" of the ranching operations. At the trial one accountant defined the "net operating profit" as "that would include all ranch sales, except the sales of livestock upon which the Federal income tax people will give us capital gains treatment". The other described

the operating profit as the gross sales of the cattle less expenses, and that a schedule of capital gains was kept with such sums being treated differently for income tax purposes.

A retired vice-president and trust officer of the First National Bank and Trust Company of Helena, testified as to his understanding in these matters as the result of an estate planning meeting in 1965 with George Davis, Donald Davis and the accountants:

> "A. Well, as I recall it, Mr. George Davis explained what his idea was of net operating income for the purpose of determining salary and bonuses--for a salary and bonus arrangement, and that was the gross operating income, excluding capital gains, less ordinary operating expenses, and not including depreciation, and that would be the net--that would leave you the net profit from the operation." (Emphasis supplied)

In contrast to the above statements supporting defendant's position, the testimony of the brothers, Donald and Dan Davis, stands in a different light from the outset. While the element of depreciation is not contested by the plaintiffs in determining the net operating profits, clearly different testimony was given in regard to the inclusion of the element of capital gains in the net operating income. Dan Davis testified:

> "Q. Now, if you know, when you made this original agreement or arrangement in 1965, was there any discussion had as to whether the capital gains income would be treated the same way that the other income was, Mr. Davis? [Objection sustained at this point.]

> "MR LEAPHART: Was there any discussion, let me put it that way?

> "A. The discussion that took place, well, that was never discussed --- they never told me that it was to be deducted. It was just supposed to be net profit.

> "* * *

> "Q. [Cross-examination] And when you say 'all of the profit' what do you mean by that?

> "A. The difference between total sales and total expenses, the profit.

"Q. Now, in that claim that you make, were you contending that you <u>were entitled to capital gain</u>?

"A. When he made the agreement with us, <u>he never said anything about holding out capital gains</u>." (Emphasis supplied).

Dan Davis went on to state that his statement applied to both of the alleged contracts.

Donald Davis on cross-examination testified:

"Q. Now, these years when he went over the income and the expense of the ranch with you, and showed his profit, <u>you and he frequently didn't see the profit the same</u>, or what the profit was as you contend was to be shared, is that right?

"A. I don't ever remember of having any discussion with him. At times when we were looking over these figures, no, <u>he never indicated that capital gains ever entered into this deal at all, but only that the profit was the difference between the total sales and total expenses. He claimed that the monies that were treated as capital gains, as far as tax purposes were concerned, were included in the net profits, in his tax return</u>.

" * * *

"Q. Do you believe he [defendant] was confused about it?

"A. Well, at first, there were times that I thought that that was a possibility.

"Q. That he was confused, and didn't understand it the way you did, is that right?

"A. <u>Well, there was no doubt in my mind that there was a difference</u>. Now, I don't know how he understood it, but he had been in the business long enough that it was certainly hard for me to believe that he really understood it the way he was telling me he understood it--- he had been in the business too long to make me believe that." (Emphasis supplied)

While the evidence may stand in apparent conflict on the inclusion or exclusion of the capital gains in the net operating profit of the ranches, the jury was vested with the sole consideration of the factual issues and the credibility of witnesses and testimony.

This Court finds nothing incompatible that might not be explained by the proposition that defendant was concerned with tax matters with his accountants, and treated Donald Davis and Dan Davis differently with regard to the contract of profit sharing. It would be wholly consistent with the normal understanding and representations given to the Davis brothers that the profits meant revenues minus expenses. The relative positions taken in the lawsuits and the introduction of testimony regarding tax matters is collateral to the issue of the understanding between George Davis and the brothers. This Court will not disturb the factual determinations of the jury and finds nothing that is incredible or insufficient in the evidence produced at trial, upon which the jury relied.

In regard to defendant's final issue---the statute of frauds as a bar to oral contracts---it is sufficient to note that the oral contracts of profit sharing relied upon at trial, were fully executed on the part of the plaintiffs and as such represent a well recognized exception to the statute of frauds. Besse v. McHenry, 89 Mont. 520, 300 P. 199.

The judgment of the trial court is affirmed.

_____
Associate Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Associate Justices.

- 10 -