No. 85-44

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

_____

EUGENE GUNLOCK AND BETTY GUNLOCK,
his wife,

        Plaintiffs and Appellants,

   -vs-

WESTERN EQUIPMENT COMPANY,

        Defendant and Respondent.

_____

APPEAL FROM: District Court of the First Judicial District,
           In and for the County of Lewis & Clark,
           The Honorable Henry Loble, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Knight, Dahood, McLean & Everett; Bernard J. Everett,
        Anaconda, Montana

    For Respondent:

        Keller, Reynolds, Drake, Sternhagen & Johnson; ~~Thomas~~ *P. Keith Keller*
        ~~Q. Johnson~~, Helena, Montana

_____

              Submitted on Briefs: Oct. 3, 1985

                     Decided: December 18, 1985

Filed: DEC 18 1985

_____
                Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

In this case we affirm a District Court judgment based on a jury verdict holding that Western Equipment Company was not negligent as claimed by Eugene and Betty Gunlock in matters relating to the safe operation and maintenance of a J. I. Case Model 450 crawler loader.

Eugene Gunlock is a member of a partnership which purchased a Model 450 Case crawler loader from Western Equipment Company. The crawler loader was used in Gunlock's excavating business. The manufacturer was J. I. Case Company, and it sold the product we are concerned with in this case only through authorized dealers, of which Western Equipment Company was one.

In the summer of 1976, Gunlock's partnership ordered the Model 450 Case crawler loader from Western. In turn, Western delivered the machine to Gunlock's place of business on July 2, 1976. At the time Western delivered the machine, Gunlock was provided with two owner's manuals relating to the machine. The two manuals were numbered 9-1610 and 9-72333. Gunlock acknowledged receipt of the manuals in writing. He also acknowledged in writing that he understood the proper and safe operation as well as the maintenance requirements for the machine.

During the first year after the purchase, service work was performed by Western on the loader on several occasions. George Smith, a field service mechanic for Western, performed the service work.

On one occasion, Smith came to Gunlock's property to perform service work on the machine which required the bucket

- 2 -

of the loader to be kept in a raised position. Smith asked Gunlock if he had a "safety strut" and Gunlock responded that he did not. Smith then asked Gunlock if he had any channel iron. Gunlock told Smith he had no channel iron but that he did have angle iron in stock. Smith indicated that angle iron would work as a safety strut. Gunlock then cut the angle iron to the proper length, and gave it to Smith who then proceeded to use it. Smith thereafter left the angle iron so fabricated with Gunlock, who himself used it six or seven times while working on the crawler loader over a period of years.

Between the time the partnership purchased the Case 450 in 1976 and the eventual accident in 1980, Case published a new operator's manual for its 450 models. The newer edition bore publication number 9-6141. The original operator's manual, 9-1610, had recommended the use of a safety strut similar in configuration and identical in function to the angle-iron-accident strut. The manual recommended fabricating the strut from channel stock, which is U-shaped iron, as opposed to angle iron, which is L-shaped. The difference in configuration is not an issue in this case because the evidence indicated the angle iron was similar in function to channel iron. The later manual, 9-6141, however, recommended the use of a manufactured bolt-on strut that Case offered as a part. The newer manual also had a warning that failure to use the bolt-on strut could result in injury or death from a fall of the loader bucket.

On October 3, 1980, Gunlock found it necessary to raise the loader bucket for maintenance work. The starter on the loader did not operate on that occasion and in order to remove it, the bucket had to be held in an upright position

so that access could be gained by Gunlock to the bolts fixing the starter to the machine. Because the starter would not work, the hydraulic lift which would raise the bucket on the crawler was not working. The bucket itself weighed 4,000 pounds. Gunlock caused another front end loader to be used to lift the crawler bucket and while the bucket was held in an upright position, Gunlock inserted the same angle iron piece that Smith had used as a safety strut. The bucket was then lowered until the angle iron strut, inserted between the cylinder and the control arm on the bucket, stopped the downward motion. While the angle iron held the bucket in an upraised position, the other loader was moved away, and Gunlock went underneath to remove the starter. While he was underneath, the bucket suddenly dropped, the angle iron having "popped out," and the bucket struck Gunlock's legs. Amputation of one leg was eventually necessary.

Gunlock brought an action for his personal injuries and his wife for loss of consortium in the District Court, First Judicial District, County of Lewis and Clark. Originally he sued the manufacturer, J. I. Case Co. and Western Equipment on counts of strict liability in tort and of negligence. Midway through the litigation Gunlock's action against J. I. Case Co. was compromised and settled and J. I. Case Co. was dismissed from the action. Gunlock's cause against Western was submitted to a jury on the issue only of negligence. The jury found Western Equipment Company not to be negligent and a judgment of no liability was entered thereupon. The Gunlocks, who had moved for a directed verdict at the close of all the evidence, and for a new trial or for a judgment notwithstanding the verdict after trial, now appeal.

- 4 -

Gunlocks state three issues on appeal, but basically their argument is that under uncontradicted evidence in the case they were entitled to a directed verdict or a judgment notwithstanding the verdict such that we should now reverse and order judgment entered against Western on the issue of liability and remand for a determination of damages.

The single issue before us then is the sufficiency of evidence to justify the verdict.

When, as in this case, on appeal a judgment is challenged on the basis of insufficiency of the evidence to support it, there is no middle ground for the appellate court. We must find that the party appealing is entitled to judgment as a matter of law based on the evidence and if we do not so find, the judgment in favor of the other party must be affirmed. In other words, we must find an absence of substantial evidence to warrant submission to the jury for if there exists substantial evidence to support the jury's verdict, then it must be sustained. Lyndes v. Scofield (1979), 180 Mont. 177, 180, 589 P.2d 1000, 1002; Brothers v. Town of Virginia City (1976), 171 Mont. 352, 357, 558 P.2d 464, 467. Thus it becomes our duty to review the evidence to determine if the verdict is supported by substantial evidence when the case comes to us on appeal. Davis v. Davis (1972), 159 Mont. 355, 361, 497 P.2d 315, 318.

Gunlocks' negligence claims against Western arise out of these issues of fact: (1) Western, through its employee Smith, was negligent in using and recommending the angle iron safety strut; (2) Western was negligent in failing to advise Gunlocks of the availability of a manufactured bolt-on strut for the Model 450 crawler loader, or to provide Gunlock with a new operator's manual which recommended the use of a

bolt-on strut; and (3) Western was negligent though failure to warn Gunlock of the danger of using a safety strut that did not bolt to the loader lift cylinder.

Gunlock's evidence tending to prove his negligence claims includes the fabrication by Smith of an angle iron safety strut which when used was caught in a vise-like grip but was not otherwise bolted to the lift cylinder. The crawler loader was supplied without a safety strut and Gunlock relied on the device which was fabricated by Smith when he visited Gunlock's place of business on a service call. No warning was given by Smith of any danger that might be involved in the use of the safety strut. J. I. Case issued a new manual which related to like crawler loaders. The later manual recommended the use of a bolt-on safety strut and included a graphic warning that failure to use such a strut might result in injury or death. Included in the new manual was an illustration of the placement of the bolt-on safety strut. Gunlock had requested of Western a new manual, after the later manual had been issued but Western did not provide Gunlock with the new manual. Instead it sent to him a used copy of the manual that Gunlock had first received, which, of course, did not include either the warnings or the recommendation of the use of the bolt-on strut. Although Western was the sales representative of J. I. Case Co. in this district and had received copies of the new manual, or had the new manual available to it through use of its catalog or catalogs, Western nonetheless failed to supply Gunlock with the new manual, or procure one for him when he had requested a manual and had failed to take any step to warn him of the danger of using the angle iron safety strut.

Western countered Gunlock's evidence on negligence by showing that the safety strut which he had used had become deformed on the ends. Western showed that an angle iron in good condition, when used as a safety strut was held in what amounts to an 11,000 pound vise. Under Western's experiments, it took 63,500 pounds of force to bend an angle iron strut in good condition. There could not be more than 11,000 pounds of force when the bucket was allowed merely to rest upon the strut. Western showed that deformation of the angle iron resulted when not only the bucket's weight but hydraulic pressure was used against the strut.

Western further showed that major changes and modifications by Case in equipment came in two levels of importance, the higher level by a "mandatory modification," and the lower level by the issuance of a service bulletin calling to the dealer's attention a specific change or method of service. J. I. Case Co. had given neither of these to Western. Western had not sold a new Model 450 since the new operator's manual had been standard. Operator's manuals were not normally stocked as replacement items, and were not heavily used by the dealers. When a request for a new manual from Gunlock was received by Western, its employee looked for the manual that applied to a Model 450 crawler loader and forwarded that manual to Gunlock, although it did not include the new information about the bolt-on safety strut. The change in the two manuals had not been called to Western's attention, and their operating procedures in their service to customers would not have brought the change in the manuals to their attention in the ordinary course of their business. The bolt-on strut was catalogued by Case only for a later series of crawler loaders.

In this state of the evidence, the District Court submitted the issue of negligence to the jury, denying Gunlock's motion for directed verdict, and gave instructions on negligence to which no objections are made on appeal.

From our review of the evidence, we determine that a verdict either way would have been supported by substantial credible evidence in the case. This being true, we are not empowered as an appellate court to set aside the decision of the trier of fact as a matter of law. We therefore affirm the verdict of the District Court.

_John C. Sheehy_
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices