JOHN CUARISMA, Claimant-Appellee, *v.* URBAN PAINTERS, LTD., Employer-Appellant, and PACIFIC INSURANCE COMPANY, LTD., Insurance Carrier-Appellant

NO. 5879

AUGUST 15, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY KIDWELL, J.

This appeal is from a decision of the Labor and Industrial Relations Appeals Board awarding compensation to appellee for both permanent total disability and disfigurement resulting from a work accident. We hold that the awards do not result in overlapping compensation and affirm the decision of the Board. In this opinion, all references to HRS Chapter 386 refer to the statute as it had been amended and was effective on May 1, 1969, the date of appellee's injury.[1]

There is no dispute that appellee's injury was compensable under the Workers' Compensation Law, HRS ch. 386.

---

[1] In view of the fact that Chapter 386 has been amended in several respects since May 1, 1969, we refer to the statute in the past tense in this opinion without attempting to distinguish the provisions which have been amended.

Appellee was awarded lump-sum disfigurement benefits of $1,550 in addition to permanent total disability benefits at a weekly rate of $112.50 commencing May 1, 1969. The liability of the employer for payment of the weekly benefits (not including the disfigurement award) is to terminate when a total amount of $35,100 has been paid. Thereafter the weekly payments are to be made by the special compensation fund created by HRS § 386-151. Appellants do not contest the award for permanent total disability or the fact of disfigurement, but contend that an award for disfigurement cannot be made in addition to an award for permanent total disability or in excess of a limit of $35,100 upon the aggregate liability of the employer. The Attorney General, appearing for the fund, denies liability on the part of the fund for the disfigurement award.

I

"Total disability" was defined in HRS § 386-1 as "disability of such an extent that the disabled employee has no reasonable prospect of finding regular employment of any kind in the normal labor market". Benefits for permanent and temporary total disability were provided by HRS § 386-31, with disability caused by certain injuries such as loss of sight in both eyes, loss of both feet, etc., conclusively deemed permanent and total, but with the permanency and totality of the disability in other cases to be determined from the facts.

"Disability" was defined in HRS § 386-1 as "loss or impairment of a physical or mental function". Benefits for permanent and temporary partial disability were provided by HRS § 386-32, which specified in subsection (a) the benefit to be awarded in cases of permanent partial disability involving the loss of a designated body member or bodily function. Disfigurement was provided for in § 386-32(a), under the general heading of "permanent partial disability", as follows:

"Disfigurement. In cases of personal injury resulting in disfigurement the director of labor and industrial relations may, in his discretion, award such compensation as

he deems proper and equitable in view of the disfigurement but not to exceed $10,000. Disfigurement is separate from other permanent partial disability and includes scarring and other disfiguring consequences caused by medical, surgical, and hospital treatment of the employee."

The position of appellants may be stated very simply. Appellants argue that compensation is awarded only for loss of earning capacity and that compensation for total loss of earning capacity necessarily satisfies all claims which may be made under the statute. The differences in the statutory definitions of "total disability", for which benefits were awarded in this case under § 386-31(a), and "disability", under which heading in § 386-32(a) the disfigurement award was made, must be dealt with. But before turning to consideration of the structure and history of the Hawaii statute, we must notice that the present dispute is part of a larger debate involving a reexamination of the concepts of workers' compensation.

The National Commission on State Workmen's Compensation Laws, established by the Occupational Safety and Health Act of 1970, has characterized permanent partial disability benefits as the most controversial and complex aspect of workers' compensation, in large part because of ambiguity in the concepts upon which the benefits are based. The Commission points out that state statutes employ two bases for permanent partial disability benefits. Such benefits may be paid solely because of a physical (including mental) impairment, without regard to the extent of the worker's disablement to engage in an occupation. On the other hand, benefits may be paid because the worker has a disability to engage in an occupation, which disability may be measured by actual wage loss or by loss in wage-earning capacity. The statutes adopt approaches which combine the impairment and disability bases in different ways, and the same statute may contain more than one of the approaches. Report of the National Commission on State Workmen's Compensation Laws, U.S. Govt. Printing Office (1972), p. 67.

For impairments which are not specifically named and provided for by statute, a wide range of approaches used in the various state workers' compensation systems is outlined by the Commission. Benefits for such impairments may be paid only if there is disability, or on a formula which considers both the extent of the impairment and the extent of the resulting disability, or on the more favorable of the impairment and the disability ratings, or separately for each so that the worker may be eligible for both benefits for impairment and benefits for disability. The Commission concludes that reform of the treatment of permanent partial disability benefits is the most pressing and fundamental issue confronting workers' compensation.

The Hawaii law, in HRS § 386-32(a) under the heading of "permanent partial disability", incorporates a schedule of benefits for a specific list of injuries, which benefits consist of weekly sums computed as a percentage of the worker's average weekly wages and are to be paid for designated numbers of weeks regardless of earnings subsequent to the injury. The Commission comments upon such schedules:

> It could be argued that the main purpose of such a schedule is to provide benefits for disability, and that impairment is used as the basis for benefits because impairment and disability are closely related. The validity of this argument is questionable because there is no exact relationship between degree of impairment and the extent of wage loss. Some workers with only minor permanent impairments have substantial wage losses. The concert pianist who loses part of one finger is the classic example. Other workers may suffer serious impairments and experience only limited disability. A lawyer might, for example, lose an arm without permanent loss of earning capacity. *Id.* p. 68.

The amount of the disfigurement award was not contested in the present case and is not in issue on this appeal. We are unable to determine from the record how the amount of the award was computed. The disfigurement consists of surgical scars on appellee's back and neck, with nothing to suggest that any loss of function is attributable to them. Since the

award for disfigurement was accompanied by a finding of permanent total disability as the result of a back injury and an award of a permanent total disability benefit, it is inescapable that the disfigurement award has been granted as for an impairment rather than a disability, in the context of the foregoing analysis. Appellants contend that there is no room in the conceptual structure of the Hawaii workers' compensation law for this result. In effect, the contention is that the Hawaii law is one under which benefits are based solely upon disability in terms of loss of wage-earning capacity, and that all of its provisions must be interpreted as providing benefits only for such disability to the exclusion of mere impairment, in order to maintain the conceptual integrity of the law.

Disfigurement is not specifically designated a type of permanent partial disability by the Hawaii law and the amount of compensation for disfigurement is a lump sum determined by the director, rather than a weekly benefit determined from the schedule. However, the provision with respect to disfigurement appears in a subsection, § 386- 32(a), which deals otherwise only with permanent partial disability. The provision also contains defining language which states: "Disfigurement is separate from *other* permanent partial disability" (emphasis added). For the purposes of this opinion, we will deal with disfigurement as included generally in the category of permanent partial disabilities for the purposes of chapter 386. Because of the possible distinguishing characteristics of other forms of permanent partial disability, we do not intend to imply that the conclusions we have reached with respect to disfigurement awards are necessarily applicable with respect to awards for other forms of permanent partial disability.

The structure of §§ 386-31 and 386-32 is such that no violence would be done to the language of the statute by sustaining awards for both permanent total disability and disfigurement. The statute does not, in direct terms, deal with the relation between permanent total disability benefits and permanent partial disability benefits, including disfigurement.

It appears that a majority of the states provide a schedule

of benefits for injuries which cause permanent impairment on much the same basis as does Hawaii, with the extent of impairment serving as the primary basis for the total amount of benefits but with the benefits also dependent in part on the worker's preinjury earnings. Burton, Permanent Partial Disabilities and Workers' Compensation, 53 Journal of Urban Law 853, 870 (1976). However, this writer notes that the statutes in Washington and Oregon base some benefits solely on the extent of the impairment, awarding the same dollar sum without regard to preinjury earnings or loss of earning capacity. *Id.* at 867. The following argument is offered for this approach:

> "A more efficient approach to providing permanent partial disability benefits is to relate these benefits to the extent of impairment. If the benefits linked to the extent of impairment are considered to be payments for impairment per se, then the approach may be relatively efficient and equitable. If the underlying purpose is to compensate for work disability, however, and the payments are operationally based on impairment only because impairment is considered to be a convenient proxy for disability, then the program may be relatively efficient, but is probably not going to be very equitable. This is because the extent of impairment and the extent of disability are probably not closely related, and therefore benefits linked to impairments are not going to compensate fairly for work disability." 53 Journal of Urban Law at 877.

We are not concerned here with the question whether § 386-32, in the manner in which it dealt with the other scheduled injuries, disclosed a primary intent to measure the scheduled benefits for other permanent partial disability by the extent of the impairment as such or by the extent of a presumed loss of earning capacity. The lump sum award authorized for disfigurement was not expressly linked to preinjury earnings or to actual or assumed loss of earning capacity, and the statute was silent with respect to the criteria by which the director was to determine the award. What we have learned with respect to workers' compensation laws in general supports the conclusion that there would have

been no absurdity, or even a startling departure from the norm, in the adoption by the legislature of the extent of impairment as the sole measure of benefits for disfigurement, without regard to any relation to earnings. We are urged, however, to imply a legislative purpose to compensate only for loss of earning capacity, which purpose would not admit of the award of a benefit for disfigurement in addition to an award for permanent total disability.

## II

The theory urged on us by appellants appears to have prevailed in six states and in the interpretation of the federal Longshoremen's and Harbor Workers' Compensation Act. In these decisions, an award for disfigurement has been held to be precluded where benefits have been awarded for permanent total disability. The cases have arisen under varying statutes and at varying times in the development of this body of law, but generally adopt the rationale that an award for disfigurement compensates for loss of earning capacity and results in duplication of benefits where an award has also been made for permanent total disability. See *Gallman v. Walt's Tree Service, Inc.*, 43 A.D.2d 419, 352 N.Y.S.2d 516 (1974); *Miller v. General Chemical Division*, 128 So. 2d 39 (La. App. 1961); *Garrett's Furniture Co. v. Morgan*, 498 P.2d 1380 (Okla. 1972); *Burnette v. Startex Mills*, 195 S.C. 118, 10 S.E.2d 164 (1940); *Stanley v. Hyman-Michaels Co.*, 22 S.E.2d 570 (N.C. 1942); *Baffi v. Lehigh Valley Coal Co.*, 87 Pa. Super. Ct. 579 (1926); *Todd Shipyards Corp. v. Pillsbury*, 136 F. Supp. 846 (S.D. Cal. 1955), *aff'd*. 236 F.2d 559, 239 F.2d 273 (9th Cir. 1956).

A leading authority on workers compensation law argues strenuously that decisions on this and related questions should be governed by the "theory that compensation for disfigurement is justified by and related to a presumption of ultimate impairment of earning capacity". 2 Larson's Workmen's Compensation Law, § 58.32 (1976). Professor

Larson asserts that the underlying principle of workers' compensation law is that benefits relate to loss of earning capacity and not to physical injury as such, and warns that "any abandonment of the pervading impairment-of-earning-capacity concept in favor of an ill-defined notion that workmen's compensation is designed to indemnify for physical injury as such could cause serious dangers to the system". *Id.*, § 57.10. To the extent that the body of decisional law to which we have referred is not explained by the idiosyncracies of particular statutes, it is dependent on the principle asserted by Professor Larson. We are not persuaded that this principle should be accepted as a guide to our decision in the case before us.

The ambiguities in the conceptual foundations of the provisions which govern permanent partial disability benefits in the Hawaii law make it at least difficult to discover whether there is a pervading principle upon which the compensation structure is based. Dealing with a workers' compensation law which was similarly structured, the North Dakota court has sustained an award of a permanent total disability benefit and a nonscheduled permanent partial disability benefit for injuries suffered in the same accident. Although the nonscheduled permanent partial disability was required by the statute to be measured as a percentage of total disability, as in Hawaii, the court concluded that the permanent total disability benefit was compensation for loss of earning capacity and that the nonscheduled permanent partial disability benefit was compensation for actual impairment of the employee's whole body, so that the first award did not embrace the second. *Buechler v. North Dakota Workmen's Compensation Bureau*, 222 N.W.2d 858 (N.D. 1974).[2]

It appears to be nowhere now seriously argued that state legislatures are confined, in specifying awards for injuries, to measuring the benefit by the injured worker's loss of earning power. This argument was rejected in *New York Central R.R.*

---

[2] Professor Larson describes the result reached in *Buechler* as "preposterous". 2 Larson, Workmen's Compensation Law, Feb. 1978 Supp. p. 133.

*v. Bianc,* 250 U.S. 596 (1919), and more recently in *Matthews v. Falvey Linen Supply Inc.,* 294 A.2d 398 (R.I. 1972), where it was said:

"In short, the sound view, in our opinion, is that where the legislation discloses an express legislative mandate that compensation be paid for permanent disfigurement without requiring that the disfigurement impair the earning capacity of the injured employee, the courts will not imply that the fundamental purpose of such statutes, which is to provide compensation for the loss of earnings or earning capacity, can be used to defeat the expression of legislative intent to compensate for the disfigurement." 294 A.2d at 401.

The Rhode Island court did not have difficulty in finding a legislative intent to award compensation for disfigurement upon the basis of impairment rather than loss of earning capacity, in view of the history of the particular statute before it.

In *Keltz v. Cereal & Fruit Products, Limited,* 34 Haw. 317, 319 (1937), we said that "the purpose of the [Hawaii Workmen's Compensation Law] is not to provide compensation for physical suffering but is solely for the purpose of compensating the injured employee for the loss or reduction of earning power". At the time *Keltz* was decided, however, the weekly benefit for nonscheduled permanent partial disability was a percentage of the difference between the employee's average weekly wages and his wage earning capacity, in the same employment or otherwise, as reduced by the disability. Revised Laws of Hawaii 1935, § 7493. We held that an employee whose vision in one eye had been permanently impaired by a work-related injury was not entitled to an award for nonscheduled permanent partial disability, where visual efficiency had been restored by corrective glasses and the employee was able to perform the duties of his former employment without loss of salary. The earning loss measure of benefit for nonscheduled permanent partial disability had, at the time of the present case, been replaced by a percentage of the benefit for a comparable partial disability named in the schedule or a benefit based upon a percentage

of total disability. HRS § 386-32(a). The singleness of purpose which we attributed to the workers' compensation law in 1937 is no longer apparent in the statute. Moreover, the history of the substantial changes which have been made reflects a departure from that purpose.

III

Prior to 1963, the Workmen's Compensation Law, Ch. 97, Revised Laws of Hawaii 1955, did not include a definition of "disability", although the following definition was provided by § 97-1:

" 'Partial disability.' Diminished ability to obtain employment owing to disfigurement resulting from an injury may be held to constitue partial disability."

The Workmen's Compensation Law was rewritten by Act 116, Sess. L. 1963. The quoted definition of partial disability was deleted, and the definitions which now appear in § 386-1 were inserted into § 97-1:

" 'Disability' means the loss or impairment of a physical or mental function.

" 'Total disability' means disability of such an extent that the disabled employee has no reasonable prospect of finding regular employment of any kind in the normal labor market."

With respect to these definitions, Standing Committee Report 334 of the Senate Committee on Labor, reporting out a redraft of Senate Bill 883 which became Act 116 (in further revised form), has this to say:

"A definition of *disability* has been added so as to make clear that disability means bodily impairment and not impairment of earning power. The basis of compensability in Hawaii is loss of physical or mental functioning, regardless of whether or not it entails loss of earnings. . . ." Senate Journal 1963, p. 789.

"Total disability is defined in the customary manner, but taking account of the fact that the concept of disability in Hawaii is purely functional and physiological and

varies from that accepted in the majority of American jurisdictions." Senate Journal 1963, p. 791.

The Senate Committee acknowledged in its report that S.B. 883 was based in large measure on the recodification of Chapter 97 recommended by Professor Stefan A. Riesenfeld in "Study of the Workmen's Compensation Law in Hawaii", Legislative Reference Bureau Report No. 1 (1963). Among the amendments proposed by Professor Riesenfeld was the elimination of a parenthetical clause in § 97-26(a) which fixed at 100% of their actual earnings, rather than at the minimum of $18 applicable to other workers, the weekly benefits awarded for permanent partial disability to workers having average weekly wages of less than $18. In explanation of this proposal, Professor Riesenfeld said:

"Compensation for permanent partial disability compensates the worker for loss of bodily integrity rather than for loss of earnings." L.R.B. Report No. 1 (1963) p. 106.

The Senate Committee's redraft of S.B. 883 proposed the substitution of a flat benefit of $75 per week as a permanent partial disability benefit, in lieu of the then subsisting range of $18 to $112.50 per week. In support of this proposal the Committee said:

"The flat rate recognizes that permanent partial disability benefits compensate the worker for loss of bodily integrity rather than loss of earnings; that the payment is an indemnity for an injury received which makes the injured worker less than a whole man. The flat rate is based on the belief that the measure of the seriousness of a bodily impairment is not a person's salary but rather the nature of the injury itself." Senate Journal 1963, p. 791.

As enacted by Act 116, however, the revised statute embodied the change recommended by Professor Riesenfeld but not the change to a flat rate of compensation for permanent partial disability recommended by the Senate Committee. The legislative history is silent as to the reasons for the adoption of this alternative. That the legislature had not rejected the rationale which Professor Riesenfeld offered for his proposal is indicated by the fact that the proposal was adopted without any recorded dissent from the stated

rationale and by the expression of a consistent view by the Senate Committee in relation to the definitions which were incorporated in the statute. Later legislative developments lend further support.

Act 25, Sess. L. 1969, became effective May 15, 1969, amending § 97-31, Revised Laws of Hawaii 1955, now HRS § 386-32, to provide for the payment out of the special compensation fund of any balance of benefits awarded under § 97-31(a), now § 386-32(a), after the employer had paid the maximum amount of benefits for which the employer was liable. In its report on this legislation, the House Committee on Labor and Employment gave, as an example of the problem dealt with, the case of an employee who has received temporary total disability benefits for two years while under treatment for an arm injury, at the expiration of which his arm is amputated and he becomes able to return to work. The purpose of the amendment was stated to be to enable the worker to receive the full amount of the scheduled benefit for the loss of his arm without reduction by reason of the temporary total disability benefit, although the employer would be entitled to a statutory maximum limit on the employer's aggregate liability. In justification for this result, the Committee said:

"Permanent partial disability compensation is an indemnity payment for the loss or impairment of a physical function and, unlike temporary total disability benefits, is not compensation to replace current loss of wages." 1969 House Standing Committee Report No. 193.

Though not a part of the legislative history of Chapter 386 as it stood on May 1, 1969, the date with which we are concerned, it is appropriate for us to notice this Committee report as an interpretation of the statute made contemporaneously with the date of the accident in this case.

"Although a committee report written with regard to a subsequent enactment is not legislative history with regard to a previously enacted statute, it is entitled to some consideration as a secondarily authoritative expression of expert opinion." *Bobsee Corporation v. United States,*

411 F.2d 231, 237 n. 18 (5th Cir. 1969); *also see* Dickerson, The Interpretation and Application of Statutes 180 (1975).

When the arguments are marshalled we find that, despite the weight of case law in support of appellants' arguments, there is insufficient evidence in the structure and history of Chapter 386, as it read on May 1, 1969, to support appellants' contention that benefits for disfigurement were intended by the legislature to compensate only for presumed loss of wage-earning capacity. A choice by the legislature to relate the benefits awarded for disfigurement to the amount of impairment of bodily integrity rather than loss of wage-earning capacity was, at least arguably, supportable by considerations of efficiency and equity. If the award in this case for disfigurement is regarded as compensation for impairment, while the award for permanent total disability is regarded as compensation for loss of earning capacity, no duplication of compensation is apparent. The two awards may stand together without doing violence to any provision of the statute.

We conclude that Chapter 386, as it read on May 1, 1969, did not preclude the award of benefits for permanent total disability and for disfigurement resulting from the same work accident.

IV

We thus must address the question whether the burden of the disfigurement award falls upon the employer or the special compensation fund. The employer's maximum aggregate liability is fixed by the statute in each of the combinations of (1) permanent total disability benefits and temporary total disability benefits, and (2) permanent partial disability benefits, temporary partial disability benefits and temporary total disability benefits. But the statute is silent with respect to a similar limitation upon the employer's maximum liability for a combination of benefits awarded for permanent total disability and disfigurement or other partial disability.

The drafting scheme of Chapter 386 assigned provisions relating to total disability to § 386-31 and those relating to

partial disability to § 386-32. Each section assigned provisions relating to permanent disability to subsection (a) and those relating to temporary disability to subsection (b). Accordingly, § 386-31(a) dealt with permanent total disability and § 386-31(b) with temporary total disability, followed by § 386-31(c) which, as it read on May 1, 1969, dealt with a combination of these as follows:

> "(c) Maximum benefits chargeable to employer. The aggregate liability of the employer for weekly benefit payments under subsections (a) and (b) shall not exceed the sum of $35,100."

Section 386-32(a) similarly dealt with permanent partial disability, including disfigurement, while § 386-32(b) dealt with temporary partial disability. Section 386-32(c), with which we are directly concerned, as it read on May 1, 1969 then provided:

> "(c) Provisions common to permanent and temporary partial disability; maximum benefits. No determination of partial disability shall be made until two weeks from
the date of the injury. The aggregate liability of an employer for benefits under this section and section 386-31(b) shall not exceed $35,100."

Prior to the 1963 amendments, § 97-26(d), Revised Laws of Hawaii 1955, had provided that "the total liability of an employer for compensation under this section and under section 97-25, taken together, shall not exceed in the aggregate the sum of $25,000," with the exclusion of amounts paid for artificial members, aids or appliances. Section 97-25 then contained the provisions for permanent and temporary total disability now contained in § 386-31. The question with which we are now concerned could not have arisen, since the statutory employer's maximum applied to any combination of benefits under the two sections.

Professor Riesenfeld's recommendations in 1963 included an amendment of this section to read, as it appeared in Act 116 as § 97-31(c), as follows:

> "(c) Provisions common to permanent and temporary partial disability; maximum benefits. No determination of partial disability shall be made until two weeks from

the date of the injury. The aggregate liability of an employer for benefits under this section and section 97-30(b) shall not exceed $25,000 except that in cases where the application of subsection (a) of this section by itself produces a higher amount of compensation, that amount shall constitute his total liability for weekly benefits under these sections.

Professor Riesenfeld's explanation of this amendment was as follows:

"The ceiling governing maximum compensation for partial disability (section 97-26(d)) has been revised in order to take care of the difficulties produced by the 1959 increase of compensation for permanent partial disability which in some cases exceeds the $25,000 limit. In these cases the total liability of the employer should be at least the amount flowing from the application of the schedule, although no additional sums would be added for any preceding period of temporary total disability. A sentence has been added amending the existing law in that manner." L.R.B. Report No. 1 (1963) p. 107.

As Chapter 97 was amended by Act 116, § 97-30(a) contained the provisions dealing with permanent total disability, while § 97-30(b) contained only provisions dealing with temporary total disability. Section 97-31 provided with respect to both permanent and partial disability. The amendment thus excluded from the former all-inclusive employer's liability ceiling the combination of benefits under § 97-30(a) and § 97-31, being benefits for total permanent disability and benefits for partial disability, whether permanent or temporary. The reason for this change is not explained in the legislative history.

Section 97-31(c) was once more amended in 1967, to read as it did in HRS § 386-32(c) on May 1, 1969. The sole purpose of the amendment, as explained in the report of the Senate Committee on Labor, was to raise the ceiling on the employer's liability. No change was made in the limitation of the ceiling to the combination only of temporary total disability and partial disability. Both Senate and House committee reports on this legislation acknowledge the limitation on the

ceiling by stating: "This bill proposes to set the aggregate employer liability for temporary total and for partial disability at $35,000" (raised by amendment to $35,100). 1967 Senate Standing Committee Report No. 159; 1967 House Standing Committee Report No. 839. The final event in the history of this provision occurred with the amendment in 1972 of HRS §§ 386-31 and 386-32 so as to delete the ceiling on the employer's liability, which no longer appears in the statute.

Prior to the 1963 amendments, appellants could have successfully contended that the ceiling on the employer's liability for benefits under the statute applied to any combination of permanent total disability benefits and partial disability benefits, such as an award for disfigurement. But it is apparent that the limitation of the ceiling by the 1963 amendments, so as to exclude any such combination of benefits, was a deliberate legislative action. HRS § 386-32(c), as it read on May 1, 1969, furnished no support for appellant's present contention. The legislative intent having been clearly expressed, we cannot supply what the legislature chose to withhold. We conclude that the employer in this case is subject to liability for the disfigurement award in addition to its liability up to the statutory maximum of $35,100 for permanent total disability benefits.

The judgment is affirmed.

*Robert C. Kessner and Vernon Y. T. Woo* for Employer-Appellant and Insurance Carrier-Appellant.

*Alvin T. Shim (Shim Segal Tam & Naito* of counsel) for Claimant-Appellee.

*Leroy Kuwasaki, Jr., (Frank Yap, Jr.* on the Brief), Deputy Attorneys General, State of Hawaii, for Department of Labor and Industrial Relations, Special Compensation Fund.