No. 84-112

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

MATTHEW I. GRIMSHAW,

     Claimant and Respondent,

 -vs-

L. PETER LARSON COMPANY,

     Employer and Appellant,
 and

L. PETERSON LARSON COMPANY,

     Defendant and Appellant.

---

APPEAL FROM: The Workers' Compensation Court, The Honorable
      Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

  For Appellant:

    Garlington, Lohn & Robinson; Robert E. Sheridan
    argued, Missoula, Montana

  For Respondent:

    Monte Beck argued, Bozeman, Montana

---

       Submitted: September 24, 1984

        Decided: November 15, 1984

Filed: NOV 15 1984

*Ethel M. Harrison*

---
         Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

This is an appeal from an order of the Workers' Compensation Court. The court ordered that claimant's permanent total disability benefits and permanent partial disability benefits were to be paid concurrently. The court also allowed the conversion of the permanent partial benefit to a lump sum. We reverse the order requiring the payment of concurrent benefits.

The claimant, Matthew I. Grimshaw, was injured on September 11, 1980, while in the scope and course of his employment for the L. Peter Larson Company, a self-insured employer under Plan I of the Montana Workers' Compensation Act. Claimant injured his back when the logging tractor he was operating fell into a three to four foot hole. At the time of his injury, claimant was twenty-five years old, married, and with two dependent children.

L. Peter Larson Company accepted liability for the injury and began paying the claimant total disability benefits. His total disability rate is $219 per week. After examining the claimant in September, 1982, Dr. Carl Albertson of Plains, Montana, concluded that he had an 18% impairment of the whole man as a result of his injury. He also concluded that claimant was unable to return to his former occupation to do manual labor, and recommended that he consider training for a less strenuous job.

Claimant developed a rehabilitation plan which was accepted by the Rehabilitation Services Division, and enrolled in the mechanical engineering program at Montana State University. Under that plan, in addition to his other

benefits, he is receiving reimbursement for his tuition and a monthly expense payment of $75. On October 8, 1982, after claimant had started school, the employer wrote to him stating that, since his condition had stabilized, his benefits were to be reduced to $109.50 per week for ninety weeks, the 18% partial disability rate. The letter made no mention of the rehabilitation benefits. Claimant then retained counsel, who requested that the employer reinstate total disability benefits, and also demanded that employer pay claimant's impairment claim. Employer reinstated the total disability amount, but contested its obligation to pay any impairment claim.

The Workers' Compensation Court ruled that the claimant was entitled to receive benefits based on his undisputed impairment rating while concurrently receiving the permanent total disabilty benefits during his vocational re-training. The court also required employer to pay a portion of the partial disability award in a lump sum.

The following issues are raised on appeal:

(1) Does Holton v. F. H. Stolze (1981), 195 Mont. 263, 637 P.2d 10, give rise to an impairment claim that is not a class as contemplated by section 39-71-737, MCA?

(2) Does Part 10 of the Workers' Compensation Act give rise to a separate rehabilitation benefit that is not a class as contemplated by section 39-71-737, MCA?

(3) Did the Workers' Compensation Court err in awarding part of the partial disability payments in a lump sum?

(4) Should appellant-employer be required to pay the 20% penalty as provided for in section 39-71-2907, MCA, for

dilatory payment of workers' compensation benefits?

The Workers' Compensation Court required the employer to pay permanent total disablity benefits (for rehabilitation) and permanent partial disability benefits concurrently to the claimant. The primary hurdle that must be cleared in order to uphold the order of the Worker's Compensation Court is section 39-71-737, MCA. It simply states that: "Compensation shall run consecutively and not concurrently, and payment shall not be made for two classes of disability over the same period." It should be noted at this point that the employer concedes that it will have to pay claimant some amount for his partial disability, but contends that it is not required to do this until after claimant's permanent total period expires, citing 39-71-737, MCA.

The only case that has construed 39-71-737, MCA, is Dosen v. East Butte Copper Mining Co. (1927), 78 Mont. 579, 254 P. 880. There this Court held that "[t]he 'classes' mentioned in section 2919 [the predecessor to 39-71-737] as originally enacted . . . evidently refer to the four disabilities," which are: "(1) [t]emporary total disability; (2) permanent total disability; (3) temporary partial disability; (4) permanent partial disability." Of those classes, "[t]he compensation shall run consecutively, - successively, the payments succeeding one another in regular order." 78 Mont. at 601, 254 P. at 887. In Dosen, the claimant argued that he was entitled to compensation for permanent partial disability while he was receiving temporary total benefits. This Court emphasized the "successive" nature of the various classes in holding that

-4-

the claimant was not entitled to both at once. See also McDanold v. B.N. Transport, Inc. (Mont. 1984), 679 P.2d 1188, 41 St.Rep. 472. (Temporary total disability benefits are for the healing process, and only when that process is complete is the claimant entitled to another class of compensation.)

The language of 39-71-737, MCA, has remained unaltered throughout the history of the Montana Workers' Compensation Act. Originally it was contained in a section that dealt primarily with payments made to deceased workers' beneficiaries. That language has been recodified in section 39-71-723 and 724, MCA (1983). The "classes" that section 737's predecessors referred to have varied; from the medical expense-wage loss scheme of the original act, to the present wage loss-functional impairment scheme. The fact that the Act has otherwise been amended so many times with the section 737 language remaining intact leads strongly to the conclusion that "classes" refers to all of the various benefits provided by the Act that are not otherwise specifically excepted.

Claimant mounts a two-prong defense of the Workers' Compensation Court's order. Both arguments are to the same effect; that one or the other of the payments ordered are not classes within the contemplation of section 737.

The Workers' Compensation Court based its ruling on this Court's decision in Holton v. F. H. Stolze (1981), 195 Mont. 263, 637 P.2d 10 as follows:

> "The Court found the claimant had an absolute entitlement to payment based on the impairment rating . . . Although the Court referred to the payment as a payment of a 'disability' claim, the holding, when read in context reveals

that the Court was in fact referring to the payment of an 'impairment' claim . . .[T]he payment of an 'impairment' claim is not a 'class of disability' for which concurrent payment is prohibited by section 39-71-737, MCA (1981) . . . It is separate and distinct from the other types of benefits to which an injured worker [is] entitled." Grimshaw v. Larson, Workers' Compensation Court Docket No. 1959, decided February 4, 1984. (Citations omitted.)

The Workers' Compensation Court misapplied and misinterpreted Holton. In that case, the claimant was not totally disabled, and was not receiving total disability benefits at the time he requested partial disability benefits. He had returned to work, and thus there was no issue of concurrent payment of classes of compensation.

The lower court felt that Holton gave rise to a so-called "indemnity benefit" as a new and wholly different award under the Act. This is reading too much into Holton. The language relied upon by the lower court came from the part of the opinion that was discussing the 20% penalty. Employer correctly points out the context of that language. The claimant had an undisputed right to some amount of temporary total disability benefits then and there, and the issue was how much. The claimant in Holton had already been examined, and the insurer had received a verification of the claimant's physical impairment rating.

The impairment rating is the medical component of a claimant's disability rating, which is a medical-legal concept. See Robins v. Anaconda Aluminum Co. (1978), 175 Mont. 514, 575 P.2d 67; Grosfield, Montana Workers' Compensation Manual, section 6.10. This Court in Holton implicitly held that the impairment rating is the lowest level the disability rating may reach, and when the legal

Hon. L. C. Gulbrandson
Justice, Supreme Court
Room 436 Justice Bldg.
215 North Sanders
Helena, Montana  59620

CORRECTION. In preparing this opinion for publication, we noted in our verification of titles and citations the matters listed below. Corrections have been made on our copy of the opinion.

January 24, 1985

Grimshaw v. L. Peter Larson Co., No. 84-112, Nov. 15, 1984

Page 7, line 12 from bottom --- 268 N.W.2d 23 should read 268 N.W.2d 28.



OK

**WEST PUBLISHING COMPANY**
Box 43526
St. Paul, MN 55164

consequences of the impairment are ultimately known, the disability rating may be greater.  Jensen v. Zook Bros. Const. Co. (1978), 178 Mont. 59, 582 P.2d 1191.

Holton did not address the issue of what to do with the impairment claim when total disability benefits were currently being paid.  The context of the opinion, though, suggests that physical impairment is a component of partial disability benefits, and dependent thereupon for legal efficacy.  If the claimant is not presently entitled to receive partial disability benefits, Holton does not apply.

Courts in a minority of states have upheld the concurrent payment of permanent total and permanent partial awards, "under the theory that the former is for loss of earning capacity and the latter for physical impairment." Larson, Workers' Compensation Law, section 57.14(f).  This trend was begun by the North Dakota court in Buechler v. N.D. Workman's Comp. Bureau (N.D. 1974), 222 N.W.2d 858; and Michigan, Redfern v. Sparks-Withington Co. (Mich. 1978), 268 N.W.2d 25, 35; Kansas, Cody v. Jayhawk Pipeline Co. (Kan. 1977), 565 P.2d 264, 266; Minnesota, compare Pramschiefer v. Windom Hospital (Minn. 1973), 211 N.W.2d 365 and Boquist v. Dayton-Hudson Corporation (Minn. 1973), 209 N.W.2d 783, with Minn. Stats. Ann. section 176.021 subd. 3 (1984); and Hawaii, Cuarisma v. Urban Painters, Ltd. (Haw. 1979), 583 P.2d 321, have followed suit.  See also Larson, supra. These states are still in the minority, and their situations differ from Montana's in at least three respects: (1) a reliance on explicit statutory language and history in upholding concurrent benefits.  See particularly, Cuarisma. Montana does not have such a statutory scheme; (2) Montana

does not subscribe to exactly the same distinction (earning capacity-physical impairment) between the types of benefits. Here, partial benefits entail more than just physical impairment, including also the loss of earning capacity; and (3) none of these states have counterparts to section 39-71-737, MCA.

Alternatively, claimant argues that "rehabilitation benefits" are not a "class" of benefits covered by 39-71-737, relying on language in section 39-71-1003: "The eligibility of any worker to receive other benefits under the Workers' Compensation Act is in no way affected by his entrance upon a course of vocational rehabilitation . . . "

Part 10 of the Act governs the rehabilitation program. It allows the Division to make travel, living, tuition and school related expense payments to qualified claimants. The living expenses provided have a maximum of $50 per week. These are the only payments specifically authorized by this part of the Act.

Claimant's main argument is that rehabilitation benefits serve a different purpose than the other benefits provided by the Act, and stand on their own in Part 10. He points out a previous Workers' Compensation Court ruling, McKean v. Rosauer's, WCC Docket No. 881-186, decided March 31, 1982, where the court ruled that claimants undergoing rehabilitation programs are entitled to permanent total disability benefits for the reasonable duration of the programs. He contends that what the Workers' Compensation Court did in McKean was hold that the amount of rehabilitation benefits should be determined by reference to the permanent total rate.

The <u>McKean</u> court held:

> "The issue presented here is one of the basic, nagging problems which has not been specifically addressed by the Workers' Compensation Act. It is unfortunate that a fourth category of disability benefits was not adopted to provide for this situation where the claimant cannot return to her previous employment and must be retrained. . .

> "This Court is of the opinion that the claimant should be put on permanent total disability benefits until her retraining period is over. This option appears to be the wiser course for several reasons. First, a claimant whose physical restrictions require vocational rehabilitation better fits under the definintion of permanent total disability under section 39-71-116 (13) MCA. [It provides:]

> "'(13) "Permanent total disability" means a condition resulting from injury as defined in this chapter that results in the loss of actual earnings or earning capability that exists after the injured worker is as far restored as the permanent character of the injuries will permit <u>and which results in the worker having no reasonable prospect of finding regular employment of any kind in the normal labor market.</u>'

> "Clearly, the claimant here has no reasonable prospect of finding a job in the normal labor market when her physical restrictions do not permit her to return to her previous employments and she has no other employment skills to offer a prospective employer. Until claimant acquires training for more sedentary types of employment she is totally disabled because she has no reasonable prospect of finding regular employment of any kind in the normal labor market." (Emphasis in original.)

Clearly, the Workers' Compensation Court put the claimant <u>on</u> permanent total disability benefits. Claimant, Grimshaw, is already receiving tuition payments and $75 per month for expenses under Part 10 of the Act. The permanent total benefits stand on their own in Part 7.

-9-

Secondly, the words "other benefits" in section 39-71-1003, contradistinguish the rehabilitation program payments from the other benefits provided by the Act. The most reasonable construction of that statute is that it specifically isolates the travel, tuition and living expense payments under Part 10, from the limits in the other parts of the Act.

This question is of first impression before this Court, but a recent Kansas case, Cowan v. Josten's American Yearbook Co. (Kan.App. 1983), 660 P.2d 78 dealt with a similar situation. By Kansas law, rehabilitation benefits are specifically designated temporary total benefits. K.S.A. 44-510g(g). The claimant mounted a similar argument there as here: that rehabilitation benefits, being based on differing needs and purposes, should be considered separate from, and should not count against, claimant's other benefits. The court held that: "when a disability stems from a scheduled injury, compensation paid during vocational rehabilitation . . . is counted against, and is not independent of, the total compensation due." 660 P.2d at 81. The Kansas court's holding was based on two grounds: (1) the statutes specifically stated that payments during rehabilitation programs were temporary total benefits, and subject to the same treatment of those benefits in other circumstances; and (2) that the legislature could have easily provided that rehabilitation benefits were specifically independent of all other benefits, but it did not. This second factor was also recognized by the court in McKean. Classifying rehabilitation benefits, other than those specifically provided for in Part 10, as separate,

independent benefits, is best left to the legislature.

We hold that the concurrent payment of two classes of benefits as ordered by the Workers' Compensation Court, is prohibited by section 39-71-737, MCA. We recognize that we are to construe the Workers' Compensation Act as liberally as possible in the favor of the injured claimants. Section 39-71-104, MCA. But, this liberal construction does not allow us to disregard the clear statutory provisions, State ex rel Magelo v. Industrial Accident Board (1936), 102 Mont. 455, 59 P.2d 785; Davis v. Industrial Accident Board (1932), 92 Mont. 503, 15 P.2d 919, or to use it to the point of repealing or abrogating a statute. Klein v. Ind. Wholesale Associated Growers (1975), 167 Mont. 341, 538 P.2d 1358.

The effect of this decision is not to deny claimants any benefits they are entitled to. We are simply holding that 39-71-737, MCA applies to prevent the concurrent payment of benefits provided under Part 7 of the Act, and that the benefits provided under Part 10 are not affected.

In the case of Matthew Grimshaw, he is, and will be entitled to total disability benefits during the reasonable duration of his rehabilitation program. At the same time, he will also be entitled to any rehabilitation benefits awarded under Part 10 of the Act, and these benefits are totally separate from, and not counted against his Part 7 benefits. When he has completed his rehabilitation program, he will, at that time, be entitled to his partial disability benefits. Under Holton, his 18% disability payments will be due immediately. It may be that the effects of his injury leave him disabled in the workplace to an extent greater than his physical impairment level, in which case, the

Workers' Compensation Court will then set his final partial disability rating. It is the employer's hope that, due to his rehabilitation program, Matthew will suffer no greater legal disability than the 18% physical impairment level. If that is the case, employer is not obligated to pay anymore than that, but the 18% amount must be paid regardless.

We reverse the order of the Workers' Compensation Court, and remand for proceedings consistent with this holding. Accordingly, we do not at this time reach the issue of the lump sum payment.

Finally, as to respondent's request for the 20% penalty, as provided for in section 39-71-2907, MCA, it is apparent that Larson was not acting in an "unreasonable" manner in witholding payment of the permanent partial amount. There was, as evidenced by the foregoing discussion, a bona fide legal dispute. Wight v. Hughes Livestock Co., Inc. (Mont. 1981), 634 P.2d 1189, 38 St.Rep. 1632. The penalty is inappropriate in this case.

Reversed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Mr. Justice John C. Sheehy:

I concur in the result.

_____
Justice

-12-