No. 90-388

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

JAMES P. MONROY (Deceased),

 Claimant-Respondent,

   v.

CENEX,

 Employer,

 and

NATIONAL FARMERS UNION PROPERTY
AND CASUALTY INSURANCE,

 Defendant-Appellant.

APPEAL FROM: Workers' Compensation Court,
     The Honorable Thomas Reardon, Judge presiding.


COUNSEL OF RECORD:

  For Appellant:

    Donald R. Herndon, Herndon, Hartman, Sweeney
    & Halverson, Billings, Montana

  For Respondent:

    Thomas J. Lynaugh, Lynaugh, Fitzgerald, Eiselein
    & Eakin, Billings, Montana


       Submitted on briefs: November 29, 1990
           Decided: December 19, 1990

Filed:

_____
      Clerk

Justice John C. Sheehy delivered the Opinion of the Court.

Accrual of the liability of a Workers' Compensation insurer for permanent partial disability benefits to an injured worker is the nub of this lawsuit. Defendant insurer, National Farmers Union Property and Casualty Insurance contends that if the death of the worker from a cause unrelated to his injuries intervenes before the permanent partial disability benefits are fully paid, its liability for the unpaid benefits terminates on the date of death under § 39-71-726, MCA. In the Workers' Compensation Court (Billings area), it was determined that the right to receive such benefits did not end with the death of the worker, James P. Monroy. On an agreed statement of facts, the Workers' Compensation Court awarded the estate of Monroy his impairment rating benefits less certain advances. Sustaining our holdings in two earlier cases that a workers' impairment rating is a medical component of a permanent partial disability rating, and the minimum level of such benefits which are due to the worker immediately, we affirm.

An account of the facts surrounding Monroy's injury while in the employ of the insured Cenex is not given to us. Montana workers who sustain injuries resulting in permanent partial disability become entitled to a "Holton award." In Holton v. F. H. Stoltze Land & Lumber Co. (1981), 195 Mont. 263, 269, 637 P.2d 10, 14 (Harrison, J.), this Court held that the insurer "was at least responsible for payment of a 10% disability claim" based on the insurer's physician's estimate of impairment of the worker's

2

whole body. Grimshaw v. L. Peterson Larson Co. (1984), 213 Mont. 291, 300, 691 P.2d 805, 809 (Gulbrandson, J.) followed Holton declaring that the physical impairment rating "must be paid regardless." On the authority of those two cases, the Workers' Compensation Court awarded Monroy's estate his permanent partial disability benefits based on his physical impairment rating. Scrutiny of those cases and others, and of the applicable statutes, leads us to sustain the Workers' Compensation Court.

The uncontested (agreed) facts are easily summarized. Monroy suffered an industrial injury on April 13, 1985, in the course of his employment as a laborer with Cenex in Laurel, Montana. Defendant insurer accepted liability for the claimant's injury and paid weekly temporary total disability benefits in accordance with § 39-71-701, MCA through July 21, 1988. Monroy also received partial lump-sum advances of $2,862. On April 5, 1988, Dr. Jeffrey Hansen rendered Monroy a 37% whole man impairment rating. Monroy died on July 21, 1988. On September 28, 1988, Janie Espinoza, the common-law wife of Monroy, was appointed the personal representative of his estate, received her letters, and made claim for the permanent partial disability benefits due Monroy. The death of Monroy was from causes unrelated to his industrial accident.

The "Holton award" of 37% entitled Monroy to 185 weeks at $143 per week, or a total of $26,455. The insurer was held entitled to offset against that amount the lump-sum advances and any

overpayments. The Workers' Compensation Court found the estate of Monroy entitled to the balance of the "Holton award."

In Montana, statutes in effect on the date of injury are controlling for all aspects of a Workers' Compensation claim. Buckman v. Montana Deaconess Hospital (1986), 224 Mont. 318, 321, 730 P.2d 380, 382. The statutes in effect on April 5, 1988, relating to the determination of permanent partial disability were §§ 39-71-703 and 39-71-706, MCA (both since amended). They provided:

> 39-71-703. Compensation or injuries causing partial disability.
>
> (1) Weekly compensation benefits for injury producing partial disability shall be 66 2/3% of the actual diminution in the worker's earning capacity measured in dollars, subject to a maximum weekly compensation of one-half the state's average weekly wage.
>
> (2) The compensation shall be paid during the period of disability, not exceeding, however, 500 weeks in cases of partial disability.. . .
>
> 39-71-706. Compensation for a permanent injury to a member less than loss.
>
> (1) [Here a provision for permanent injury to a member less than loss of a member] . . . In all other cases of permanent injury less than total not included in the schedule provided for in 39-71-705, the compensation for partial disability shall bear such relation to the periods stated in the schedule provided for in 39-71-705 as the disabilities bear to those produced by the injuries named in the schedule or to partial disability (500 weeks).
>
> . . .
>
> (4) No payment under this section shall be in lieu of the separate benefits of medical or hospital services and of any benefits paid under 39-71-701 for temporary total disability.

4

Those same statutes were in effect when this Court decided Holton. In that case Holton injured his back while pulling on a green chain at the employer's saw mill, which injury eventually required a laminectomy and disc removal. His injuries resulted in permanent partial impairment. Insurer's physician estimated a 10% impairment of his whole body, and the Workers' Compensation Court, considering other factors, found that the claimant had suffered a 40% disability of the whole man. In determining whether the injured worker was entitled to 20% penalty against the insurer for unreasonable delay in making payments, this Court stated:

> The triggering event for the purpose of awarding penalties for unreasonable delay or refusal to pay compensation is the insurer's receipt of medical verification of a compensable injury. Unless such verification contradicts other evidence sufficient to make a verification inherently incredible, the insurer's duty to pay commences and failure to pay (or deny a claim) will expose the carrier the possibility of penalties after 30 days. (Citing authority.)
>
> . . .
>
> The language of the statute makes it clear that the insurer has no absolute right to delay the payment of compensation until a formal hearing. (Citing authority.) Although the total amount of compensation may be in dispute, the insurer has a duty to promptly pay any undisputed compensation. (Citing authority.) Thus, the insurer in the instant case was at least responsible for payment of a 10% disability claim prior to the formal hearing. The balance of the claim shall be paid when the disability issue is finally resolved.

Holton, 637 P.2d at 13-14.

The foregoing is the basis for the term "Holton award" which has grown in use in Workers' Compensation cases.

In Grimshaw, this Court tackled the problem of partial disability benefits from a different direction. Grimshaw injured

5

his back when the logging tractor he was operating fell into a hole on September 11, 1980. He received temporary total disability benefits. In September of 1982, Dr. Carl Albertson concluded that Grimshaw had an 18% impairment of the whole man as a result of his injury. The doctor also concluded that Grimshaw was unable to return to his former occupation as a manual laborer, and that he must be trained for a less strenuous job. Accordingly, Grimshaw developed a rehabilitation plan which was accepted by the Rehabilitation Services Division, and he enrolled in a mechanical engineering program at Montana State University. He continued to receive benefits, reimbursement for his tuition costs, and a monthly expense payment of $75. The Workers' Compensation Court ruled that Grimshaw was entitled to receive benefits based on his undisputed impairment rating while concurrently receiving temporary total disability benefits during his retraining. The Worker's Compensation Court also required the employer to pay a portion of the partial disability in a lump sum. The essence of the holding on appeal in this Court in Grimshaw, was that Part 10 of the Workers' Compensation Act covers the rehabilitation program, and that the worker can receive benefits under Part 10 and at the same time receive disability benefits under Part 7 of the Act. However, the Court held that he could not receive at the same time both temporary total disability benefits and permanent partial disability benefits. The Court decided:

> In the case of Matthew Grimshaw, he is, and will be entitled to total disability benefits during the reasonable duration of his rehabilitation program. At the same time, he will also be entitled to any

6

rehabilitation benefits awarded under Part 10 of the Act, and those benefits are totally separate from, and not counted against his Part 7 benefits. When he has completed his rehabilitation program, he will, at that time, be entitled to his partial disability benefits. Under Holton, his 18% disability payments will be due immediately. It may be that the effects of his injury leave him disabled in the workplace to an extent greater than his physical impairment level, in which case, the Workers' Compensation Court will then set his final partial disability rating. It is the employer's hope that due to his rehabilitation program, Matthew will suffer no greater legal disability than the 18% physical impairment level. If that is the case, an employer is not obliged to pay any more than that, but the 18% amount must be paid regardless. (Emphasis supplied.)

Grimshaw, 691 P.2d at 809.

The Workers' Compensation Court, in deciding this case for the Monroy estate, first determined there was no dispute that as of April 5, 1988, the claimant had reached maximum healing from his injuries, based on the report from Dr. Hansen. That report also established Monroy's 37% whole person physical impairment. The insurer continued to pay temporary total disability payments to the claimant until his death on July 21, 1988. The Workers' Compensation Court found no conflict in § 39-71-737, MCA, which provides that compensation shall run consecutively and not concurrently, and that payments shall not be paid for two classes of disability over the same period. However, considering Holton and Grimshaw, the Workers' Compensation Court determined:

Thus, it seems clear that once the disability status of a claimant is changed, subsequent to the rendering of an employment award, the minimum entitlement guaranteed by the impairment rating is immediately due. Certainly, had claimant lived, his entitlement to the 37% rating would have been realized. Indeed, it would appear that as early as April 19, 1988, (14 days after the letter of Dr. Hansen) the defendant could have properly converted

7

claimant's disability payments from temporary total disability to partial disability benefits.

The fly in the ointment in this case, however, is § 39-71-726, MCA, which the defendant insurer claims is controlling in this case and has the effect of terminating permanent partial disability benefits for Monroy's estate:

> 39-71-726. No Compensation after death where death not the result of injury. If employee shall die from some cause other than the injury, there shall be no liability for compensation after his death.

The Workers' Compensation Court held that the statute was not applicable to permanent partial disability benefits under Holton and Grimshaw, because the minimum entitlement for the impairment rating was an absolute obligation on the part of the insurer and became an obligation of "liability" of the insurer on the date of maximum healing, regardless of whether or when it would be paid.

This Court said in Grimshaw, with respect to the impairment rating:

> The impairment rating is the medical component of a claimant's disability rating, which is a medical-legal concept (Citing authority.) This Court in Holton implicitly held that the impairment rating is the lowest level the disability rating may reach, and when the legal consequences of the impairment are ultimately known, the disability rating may be greater. (Citing authority.) (Emphasis in the original.)

691 P.2d at 807.

However, the defendant insurer points to two other Montana cases which construed § 39-71-726, MCA. In both of the cases, this Court applied the statute literally to deny Workers' Compensation benefits after the death of the claimant from causes other than the industrial accident.

8

In Breen v. Industrial Accident Board (1968), 150 Mont. 463, 436 P.2d 701, this Court had the problem of the injured worker's excessive consumption of alcohol. The Court found that his death was a result of alcoholism, and because the injured worker's death resulted from that and not from his industrial accident, this Court held that the Workers' Compensation benefits were terminated under the statute, except for compensation accrued prior to the death, but unpaid at the time of the death.

In Hendricks v. Anaconda Co. (1977), 173 Mont. 59, 566 P.2d 70, the claimant died from causes other than his industrial accident. He was paid his temporary total benefits to the day of his death. The claimant's widow argued that the claimant had a right to a lump sum indemnity payment which accrued when the physicians made their estimate of the percentage of impairment. In his lifetime, however, Hendricks had not elected between "disability" benefits under the permanent partial disability statute or the indemnity statute, and there had never been a determination made that the healing period had ended. This Court concluded that no lump sum benefit had accrued to the claimant as of the date of his death and none was due and payable by reason of the predecessor of § 39-71-703, MCA.

We here distinguish Breen and Hendricks, on the grounds that neither case shows that the liability of the insurer for permanent partial disability benefits had accrued prior to the date of death, and because in any event they preceded the holding of this Court in Holton. It appears clear that the Workers' Compensation Court,

9

the Workers' Compensation insurance industry, and the legislature have accepted the implication in Holton, that an award of permanent partial disability benefits based on the doctor's medical impairment rating establishes minimum liability, which is irreducible, except for present value of lump-sum advances under the present statute § 39-71-703(1)(a)(iii), MCA, when applicable.

The legislature, even at the time of Monroy's accident, seemed to regard permanent partial disability ratings as an asset belonging to the worker. In § 39-71-710, MCA, then in effect, the legislature provided that if a worker was receiving disability compensation benefits, and at the same time received retirement Social Security benefits or disability Social Security benefits, the claimant was considered to be retired and no longer in the labor market, and the liability of the insurer for the payment of compensation benefits terminated. The legislature specifically exempted from this statute permanent partial disability benefits. The legislature's intent was that even though the worker was receiving Social Security benefits by reason of age or disability, he still was entitled to receive as an irreducible minimum, his permanent partial disability benefits, because they were exempted from the operation of § 39-71-710, MCA.

When, in 1987, the legislature amended § 39-71-703, MCA (Section 23, Ch. 464, Laws of Montana (1987)), the legislature incorporated in that amendment the implicit holdings in Holton and Grimshaw. Section 39-71-703(1)(a)(iii), MCA, now provides:

> An impairment award may be paid biweekly or in a lump sum, at the discretion of the worker. Lump sums paid for

impairments are not subject to the requirements set forth in 39-71-741, except that a lump sum conversion for benefits not accrued may be reduced to present value at the rate set forth by the Division in 39-71-741(5).

Finally, this Court in Phelan v. Lee Blaine Enterprises (1986), 220 Mont. 296, 300, 716 P.2d 601, 603, stated:

> In November 1981, this Court decided Holton v. F. H. Stoltze Land and Lumber Company (1981), 195 Mont. 263, 637 P.2d 10. In Holton, this Court ruled that a carrier had a duty to pay without delay undisputed benefits. This undisputed amount was to be paid without requiring a claimant to enter into a settlement. Holton, 637 P.2d at 13, 14.

We therefore hold that the Workers' Compensation Court was correct in determining that Monroy's right to permanent partial disability benefits based upon his physical impairment rating was an irreducible minimum of payments to which he was entitled and which accrued at the time of his maximum healing. Since the date of the accrual was before Monroy's death, his right to the unpaid benefits are an asset in his estate.

As the Workers' Compensation Court pointed out, this holding does not neuter § 39-71-726, MCA. The statute continues to be effective where no settlement has been reached, the impairment has been fully paid, when total or partial disability benefits continue because maximum healing has not occurred, or when death from an unrelated cause would terminate such benefits.

This cause was bifurcated in the Workers' Compensation Court, so as to remove the issue regarding the entitlement of the estate to receive the Holton award in a lump sum. Therefore we affirm the holding of the Workers' Compensation Court as to its decision that the estate of the decedent Monroy is entitled to the "Holton award"

of his permanent partial disability benefits, and remand the cause for further proceedings not inconsistent with this Opinion.

_____
John C. Sheehy
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices